2012 OK CIV APP 109

Ashley A. BREWER, Plaintiff/Appellant,

v.

Jerry Leon MURRAY, Defendant,

and

Vicky Dyanne Jackson,
Defendant/Appellee.

No. 109,282.

Court of Civil Appeals of Oklahoma,
Division No. 2.

June 14, 2012.

Certiorari Dismissed Nov. 19, 2012.

 
 

 
 

 
 

Barry R. Davis, Atkins & Markoff, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Rodney D. Stewart, Stewart Law Firm, Oklahoma City, Oklahoma, for Defendant/Appellee.

JOHN F. FISCHER, Chief Judge.

¶1 Ashley Brewer appeals the district court's order granting the motion for summary judgment filed by Vicky Jackson in Brewer's negligence claim. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S.2011, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Because we find that Jackson owed Brewer a duty of care and that there are disputed issues of fact concerning whether Jackson breached that duty and whether any breach caused Brewer's injury, we reverse the judgment entered in favor of Jackson and remand for further proceedings.

## BACKGROUND

¶2 Brewer was thirteen years old at the time the incident occurred on which her claim is based. Jackson's daughter was fourteen. Brewer was invited to spend the night in Jackson's home. Brewer's mother contacted Jackson to confirm the invitation and to provide certain rules that her daughter was to follow. From this conversation, Brewer's mother understood that Jackson agreed to those rules and would be at home to supervise the girls. After Brewer's father dropped her off at the Jackson home, Jackson went to the lake and decided to remain there overnight, leaving the two girls alone and unsupervised. Jackson did not inform Brewer's parents that she decided to leave the girls alone. Later in the evening, Jackson's daughter called her mother and confirmed that Jackson would not return home that night. The girls then drank alcohol that they found in Jackson's home and made plans to invite some older male acquaintances of Jackson's daughter to come over. The young men, who were in their late teens and early twenties, brought more alcohol to the home. The girls became inebriated and had sexual intercourse with two of the men. Jerry Murray, the man with whom Brewer had intercourse, was nineteen at the time and was subsequently convicted of statutory rape.

¶3 Within one year of turning eighteen, Brewer sued Murray and Jackson. Brewer alleged three theories of recovery against Murray based on the sexual assault. In her claim against Jackson, Brewer alleged that Jackson "was grossly negligent" in leaving Brewer and Jackson's daughter "completely unsupervised." She further alleged that Jackson's conduct "put [Brewer] at risk and was a direct cause of her sexual assault and resulting damages which could have been prevented by Jackson's timely intervention."

¶4 Jackson sought summary judgment arguing, in essence, that she did not have a duty to protect Brewer from criminal conduct and that Brewer's injuries were caused by her own intentional conduct and Murray's criminal conduct rather than by any of Jackson's acts or omissions. The district court found in favor of Jackson in both respects.

Brewer appeals that ruling.[1]

## STANDARD OF REVIEW

¶ 5 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* We review the district court's grant of summary judgment *de novo. Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, this Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699. The evidence and the inferences to be drawn from the evidentiary material must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 1990 OK 43, ¶ 14, 792 P.2d 50, 55. If the moving party has not addressed all material facts, or if one or more of such facts is not supported by acceptable evidentiary material, summary judgment is not proper. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court). Consistent with the holding in *Spirgis,* section 2056 now provides in subparagraphs C and E that even absent dispute regarding the material facts, summary judgment may only be granted if "the movant is entitled to judgment as a matter of law" and "if appropriate." "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Copeland,* 2000 OK 36, ¶ 8, 4 P.3d at 699. "[T]o avoid trial for negligence, *defendants must establish through unchallenged evidentiary materials* that, even when viewed in a light most favorable to plaintiffs, *no disputed material facts exist* as to any material issues and that the law favors defendants." *Iglehart v. Bd. of County Comm'rs of Rogers County,* 2002 OK 76, ¶ 9, 60 P.3d 497, 501 (emphasis in original).

## ANALYSIS

¶ 6 Most of the material facts in this case are not disputed. Brewer was invited by Jackson's daughter to spend the night at Jackson's home. Jackson knew of and approved the invitation. Brewer's parents instructed her not to spend the night at a friend's house unless a parent was present, not to stay in a home where boys were present without adult supervision and not to drink alcohol. Brewer's parents had no knowledge of any prior incident when Brewer violated these rules. Brewer's mother conveyed these rules to Jackson, who agreed the rules would be followed while Brewer was in her custody. Prior to this incident, Jackson had no knowledge that her daughter had drunk alcohol or was sexually active. Prior to this incident, Jackson did not know her daughter had any interest in boys, other than a crush on a boy her age, and did not know her daughter knew any older men. Jackson was present when Brewer was dropped off but left later that evening and spent the night at her lake house without telling Brewer's parents that she was leaving the girls alone. Jackson was available by cell phone and could have called a neighbor or relative living nearby to check on the girls. There was alcohol in Jackson's liquor cabinet that the girls consumed, and as a result became intoxicated. During the evening, Jackson's daughter called to make sure Jackson would not be returning home and told Jackson everything was fine. After this call, Jackson's daughter called a twenty-year-old male she knew and invited him over. He and several friends arrived, including Murray, and provided the girls more alcohol. After drinking this alcohol, the girls went into the back yard and jumped on a trampoline while topless. Later, both girls had sexual intercourse.

---

1. Brewer's suit against Murray remains pending. On March 4, 2011, the district court entered an order pursuant to 12 O.S.2011 § 994(A) determining that there was no just reason to delay an appeal of the order granting Jackson's motion for summary judgment.

¶ 7 In her motion for summary judgment, Jackson asserted that, as a general rule and absent some special relationship, she had no duty to protect Brewer from Murray's criminal conduct. Jackson further asserted that there was no special relationship between herself and Brewer justifying an exception to the general rule. Based on these assertions Jackson concluded, and the district court found, that a special relationship did not exist and that she owed no duty to Brewer to protect her from Murray's criminal conduct.

¶ 8 The dispositive issues in this case are whether a person who takes temporary custody of a child has any duty to protect that child from the wrongful conduct of third parties and, if so, the scope of that duty. The Oklahoma Supreme Court has not previously decided these issues. Nonetheless, it has decided issues sufficiently similar to convince us that the answer to the first question is yes. For the reasons discussed in this Opinion, we find that Jackson was not entitled to judgment as a matter of law based on either the lack of duty regarding a third party's wrongful conduct or the lack of a special relationship with Brewer.

### I. Duty

¶ 9 As stated, Brewer's theory of recovery against Jackson is based on negligence. Any claim of negligence depends on the existence of a duty and the breach of that duty. *See Wofford v. Eastern State Hosp.,* 1990 OK 77, ¶ 8, 795 P.2d 516, 518. "Whether a duty exists is a question of law. . . ." *Id.* ¶ 22, 795 P.2d at 521. The general statement of one's duty is set out in 76 O.S.2011 § 1: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." Further, Oklahoma has:

> long recognized that without regard to the relationship of the parties, a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.

*Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶ 13, 160 P.3d 959, 964 (citing *Lisle v. Anderson,* 1916 OK 92, 159 P. 278). "Whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury." *Union Bank of Tucson v. Griffin,* 1989 OK 47, ¶ 13, 771 P.2d 219, 222 (citing *Bradford Sec. Processing Servs., Inc. v. Plaza Bank & Trust,* 1982 OK 96, 653 P.2d 188).

¶ 10 The general concept of duty is described in the often quoted passage from Professor Prosser:

> '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. . . .
>
> . . . .
>
> The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . [D]uty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.

William L. Prosser, *Law of Torts,* 324–27 (4th ed.1971) (footnote omitted).

¶ 11 Consequently, the initial question in determining whether Jackson owed Brewer a duty is to determine what interest Brewer had and whether that interest was entitled to legal protection. "The actor is liable for an invasion of an interest of another, if: (a) the interest invaded is protected against unintentional invasion. . . ." Restatement (Second) of Torts § 281 (1965). At the time of this incident, Brewer was thirteen years old. Minor children have a fundamental and constitutionally protected interest in a wholesome environment. *See In re T.H.L.,* 1981 OK 103, ¶ 13, 636 P.2d 330, 334. Fur-

ther, the Oklahoma penal code defines various crimes against children for which those who have custody of children may be punished, including: failure to provide necessary food, clothing, shelter, support and medical attention, 21 O.S.2011 § 852, permitting physical or sexual abuse of a child, *id.* § 852.1, and aiding or abetting a child to become delinquent by associating with immoral persons, *id.* § 858.1. Children under the age of sixteen are protected from lewd, indecent proposals and acts. *Id.* § 1123. A "zone of safety" is established around schools and child care centers with respect to registered sex offenders. *Id.* § 1125. Any person who has reason to believe a child has been abused or neglected is required to report that fact to the Department of Human Services. 10A O.S.2011 § 1–2–101. And, it is a felony to have sexual intercourse with a child under the age of sixteen. 21 O.S.2011 § 1111. Finally, it is unlawful to permit an invitee under the age of twenty-one to consume alcoholic beverages in one's residence. 37 O.S.2011 § 8.2. Children are generally dependent on their parents, guardians and legal custodians for protection from these kinds of harmful conduct. These provisions do not define the outer boundaries of a child's legally protected interest. They do, however, inform our determination of Brewer's protectable interest in this case. That interest includes the right to be protected from (1) the consumption of alcoholic beverages while a minor, and (2) sexual intercourse with older males. It is undisputed that these interests were not protected. Murray raped Brewer, and Jackson's daughter provided her alcohol although Brewer was a minor. Therefore, Jackson's liability, in the first instance, depends on whether she had a duty to protect Brewer from the harm that occurred. Rest. (Second) of Torts § 281.

### A. Duty Regarding the Conduct of Third Parties

¶ 12 In her summary judgment brief, Jackson correctly stated the general rule that, ordinarily, one has no duty to protect another from the criminal conduct caused by a third party. *See Joyce v. M & M Gas Co.,* 1983 OK 110, ¶ 4, 672 P.2d 1172,

1173. In *Joyce,* an employee left the ignition key in his employer's truck. The truck was stolen and the plaintiff was injured while the truck was being driven by the thief. The plaintiff alleged no "special circumstances" such as "leaving the vehicle in a neighbourhood heavily populated by drunks or in front of a school were [sic] it may be stolen by children." *Id.* ¶ 4 and n. 2. The Court held: "The defendant owed no duty to the general public to protect its members from the risk of the negligent driving of the thief in the circumstances of this case." *Id.,* 672 P.2d at 1173. The *Joyce* Court concluded that leaving a key in the ignition merely created a condition that made the plaintiff's injury possible. *See also Felty v. City of Lawton,* 1977 OK 109, ¶ 20, 578 P.2d 757, 762 (city not liable to accident victim injured after a thief stole a marked police car left running with the keys in the ignition because "no special circumstances were plead" that would impose an additional duty to prevent the actions of third persons). Although clearly relevant, these cases are not dispositive of the issues in this case.

¶ 13 First, despite Jackson's argument to the contrary and as previously noted, Oklahoma has "long recognized" that a special relationship is not always required before one may be held liable for the criminal conduct of third parties. *Lowery,* 2007 OK 38, ¶ 13, 160 P.3d at 964. The Restatement (Second) of Torts § 302 states the general proposition that an act or omission may be negligent if it involves an unreasonable risk of harm to another through the foreseeable act of a third person. *Cf. Lingerfelt v. Winn–Dixie Texas, Inc.,* 1982 OK 44, ¶¶ 24–25, 645 P.2d 485, 488–89 (noting this rationale is followed in Oklahoma). Section 302A of the Restatement extends this liability to acts or omissions that involve an unreasonable risk of harm through the negligent or reckless conduct of a third person. And, as noted by the Court in *Joyce:*

[The Restatement (Second) of Torts] Section 302B states that an act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person

which is intended to cause harm, even though such conduct is criminal. Comment (d) states that normally the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence, particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law. However, there are situations in which a reasonable [person] is required to anticipate and guard against intentional, even criminal misconduct. These situations arise where the actor is under a special responsibility toward the one who suffers the harm or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable [person] would take into account.

*Joyce*, 1983 OK 110, ¶ 5, 672 P.2d at 1173–74 (footnotes omitted). Therefore, the fact that third persons directly precipitated the harm suffered by Brewer is not determinative.

¶ 14 The Restatement (Second) of Torts describes four specific circumstances where one may be liable for the negligent or criminal conduct of a third party in the absence of a special relationship. Section 316 provides that a parent may be liable for the harm caused by a child if the parent has the ability to control the child but fails to do so, and if the parent knows or should know the necessity of exercising control. Section 320 provides that one who voluntarily takes custody of another under circumstances such as to deprive the other of the normal power of self-protection, is under a duty to exercise reasonable care to control the conduct of third persons so as to prevent them from intentionally harming the other if the actor has the ability to control the conduct and knows of the necessity to exercise control of such conduct. Section 320 clearly applies to teachers or other persons in charge of a public school. Restatement (Second) of Torts § 320 cmt. a. As stated in comment (b), "a child while in school is deprived of the protection of his parents or guardian. Therefore, the actor who takes custody of a . . . child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him." *Id.* cmt. b.

¶ 15 Further, one who voluntarily "takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused" by the failure to exercise reasonable care to secure the safety of the other or by discontinuing protection if that leaves the other in a more vulnerable position. *Id.* § 324(a) and (b). Section 324 may even apply where one takes charge of another who by reason of youth is incapable of caring for himself or herself. *Id.* cmt. b. These latter two provisions are consistent with Oklahoma law as stated in the Oklahoma Uniform Jury Instructions (OUJI): "One who voluntarily assumes the care of another who is not capable of caring for [himself/herself] is under a duty to act as a reasonably careful person would under similar circumstances." OUJI 9.5.[2] Finally, one who gratuitously or for consideration undertakes to render a service to another may be liable for failing to exercise reasonable care that increases the risk of harm or where the harm results from the other's reliance that the service will be performed in a reasonable manner or as agreed. *See* Rest. (Second) of Torts §§ 323 and 324A.

¶ 16 Each of these provisions provides a basis on which to find that Jackson owed Brewer a duty in this case. As to Jackson's liability for Murray's criminal conduct, sections 320, 323, 324 and 324A are relevant. We find no distinction between a teacher or an adult who takes temporary custody of a child.[3] Each has a duty to foresee that the

---

**2.** "Whenever Oklahoma Uniform Jury Instructions (OUJI) contain an instruction applicable in a civil case or a criminal case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the OUJI instructions shall be used unless the court determines that it does not accurately state the law." 12 O.S.2011 § 577.2.

**3.** Other jurisdictions have relied on one or more of these sections to find liability for the harm resulting from negligent supervision of children. A supervisory duty is based on the school employee standing *in loco parentis* or partially in place of the student's parents. *In loco parentis* is a Latin phrase meaning "in the place of a parent" or "[a]cting as a temporary guardian of a

criminal conduct of others may harm the child and to take reasonable efforts in the circumstances to protect the child. Further, Jackson's motion only addressed her potential liability for Murray's criminal conduct. Her liability for the consumption of alcohol by a minor is not addressed. It is undisputed that Jackson left alcoholic beverages in her home and that the alcohol was available to and consumed by the two minor girls. It is also undisputed that the girls became intoxicated while they were drinking this alcohol and before they drank any of the alcohol provided later by others. Jackson created that opportunity. She may also have liability for the conduct of her daughter pursuant to the circumstances described in section 316 of the Restatement. Although Jackson claimed no prior knowledge of alcohol consumption by her daughter, it is undisputed that she was aware that her daughter had been charged with possession of marijuana while in middle school, accused by school officials of selling Midol tablets to students, and was required to attend a "school" sponsored by the drug court. Whether a reasonable person knowing these facts would have acted differently is, at least, a matter of dispute.

¶ 17 Consequently, Jackson's reliance on the general proposition that she had no duty to protect Brewer from the criminal conduct of Murray was misplaced, and did not entitle her to judgment as a matter of law. Further, her failure to address her potential liability for Brewer's consumption of alcohol precludes summary judgment in her favor. *Iglehart,* 2002 OK 76, ¶ 9, 60 P.3d at 501 (defendant must establish through unchallenged evidentiary materials that, even when viewed in a light most favorable to plaintiffs, no disputed material facts exist as to any material issues and that the law favors defendant); *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685

(approved for publication by the Oklahoma Supreme Court) (if defendant has not addressed all material facts, or if one or more of such facts is not supported by admissible evidence, summary judgment for defendant is not proper).

### B. Duty From a Special Relationship

¶ 18 We also find that Jackson is not entitled to judgment regarding her contention that she had no special relationship with Brewer.

At common law, a person had no duty to prevent a third person from causing physical injury to another. However, a number of courts and the Restatement (Second) of Torts § 315 (1965) have recognized an exception to this general rule. Under this exception, a duty arises if (1) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (2) a special relationship exists between the actor and the other which gives to the other a right to protection.

*Wofford,* 1990 OK 77, ¶ 9, 795 P.2d at 518 (finding that a mental health professional has a duty to exercise reasonable professional care in the discharge of mental patients and that the duty extends to anyone foreseeably endangered by the patient's release). Consequently, a special relationship may exist between Jackson and one of the perpetrators (Jackson's daughter) or the victim (Brewer). Like section 315, section 314A of the Restatement, entitled "Special Relations Giving Rise to Duty to Aid or Protect," provides that one who voluntarily takes custody of another under circumstances that would deprive the other of normal opportunities for protection has a duty to protect the other against the unreasonable risk of physical harm. Comment "d" to this section notes that this in-

child." Black's Law Dictionary 791 (7th ed.1999). *See Pratt v. Robinson,* 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976) (duty to exercise reasonable care in supervising students within school's custody arises out of school's "special duty owed to students" by virtue of the fact that the school, rather than the parent, has assumed physical custody of the child); *Padgett v. Sch. Bd. of Escambia County,* 395 So.2d 584 (Fla.App. 1st Dist.1981). *See also*

*Dunn v. Unified Sch. Dist. No. 367,* 30 Kan. App.2d 215, 40 P.3d 315 (2002); *Jefferson County Sch. Dist. R–1 v. Justus by and Through Justus,* 725 P.2d 767 (Colo.1986); *Rupp v. Bryant,* 417 So.2d 658 (Fla.1982); *Hertzel ex rel. Joplin v. Palmyra Sch. Dist.,* 15 Neb.App. 538, 733 N.W.2d 578 (2007); *Bertram v. Malheur County,* 204 Or. App. 129, 129 P.3d 222 (2006); *Korhonen v. Allstate Ins. Co.,* 827 A.2d 833 (Maine 2003).

cludes the risk of harm caused by the criminal acts of third persons.

¶ 19 A uniformly recognized special relationship is that which exists between parent and child. With respect to Brewer, the parental role of protecting the child was relinquished by Brewer's parents and voluntarily, although temporarily, assumed by Jackson. Further, as the district court found, Jackson voluntarily assumed custody of Brewer with the specific understanding that she would be home to supervise the girls, and that the girls would not be permitted to drink alcohol or have boys in the house. It is undisputed that before returning Brewer to the custody of her parents, Jackson abandoned Brewer without any adult supervision.

¶ 20 Further, although Jackson established in her motion for summary judgment that she did not know Murray or have any control over his conduct, her motion does not establish that she had no ability to control her daughter's conduct. It is also relevant to this issue that Jackson clearly had control of her own conduct. According to Jackson's daughter, the events that occurred that night would not have happened if Jackson had stayed home because: "My parents didn't allow drinking, sex. I was 14."

¶ 21 We find that when Jackson voluntarily assumed temporary custody of Brewer in the circumstances of this case, a special relationship was created similar to the relationship between Brewer and her parents and that relationship imposed on Jackson a duty to exercise reasonable care to protect Brewer's previously identified interest.[4] Further, on the basis of this record, we cannot conclude as a matter of law that a special relationship did not exist between Jackson and her daughter.[5]

### C. Foreseeability

¶ 22 We have concluded that a special relationship existed between Jackson and Brewer, and possibly between Jackson and her daughter, and that relationship extended to Brewer's previously identified interest to be protected from harm. A third component of Jackson's duty is the risk that harm might occur if Jackson failed to exercise reasonable care. The general policy considerations in determining the existence of a duty include the foreseeability of harm to the plaintiff, the degree of certainty of harm to the plaintiff, the moral blame attached to defendant's conduct, the need to prevent future harm, the extent of the burden to the defendant and consequences to the community of imposing the duty on the defendant, and the availability of insurance for the risk involved. *Iglehart*, 2002 OK 76, ¶ 10, 60 P.3d at 502 (citing with approval *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976), and *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, 160 P.3d at 959 n. 4). Foreseeability is often the primary policy consideration in defining the scope of duty in a particular case. *Id.* ¶ 10, 60 P.3d at 502. "Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for assessing whether the conduct 'creates a generalized and foreseeable risk of harming others.' " *Id.*

Foreseeability as an element of duty of care creates a "zone of risk" and is a minimum threshold legal requirement for opening the courthouse doors. Foresee-

---

4. Other jurisdictions have found a special relationship in similar circumstances. *See Bjerke v. Johnson*, 742 N.W.2d 660, 666 (Minn.2007) (interpreting the Restatement (Second) Torts § 314A as imposing a duty to protect where the defendant "substantially deprived her of a child's primary source of protection-her parents"). *See also Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005); *Platson v. NSM, Am., Inc.*, 322 Ill.App.3d 138, 255 Ill.Dec. 208, 748 N.E.2d 1278 (2001); *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wash.2d 699, 985 P.2d 262 (1999); *Marquay v. Eno*, 139 N.H. 708, 662 A.2d 272 (1995).

5. Jackson's arguments in reliance on this Court's decision in *J.S. v. Harris*, 2009 OK CIV APP 92, 227 P.3d 1089, are not persuasive. In that case, the Court found no special relationship between a grandmother and a minor sexually abused by the grandmother's adult grandson. The grandmother did not know the minor. The grandmother only exchanged greetings with the minor on two or three occasions and never spoke to the minor's parents. The grandmother did not invite the minor to spend the night or agree to supervise him, or engage in any affirmative act that exposed the minor to a risk of harm. The Court concluded no special relationship existed between the grandmother and the minor.

ability as an element of proximate cause is a much more specific factual requirement that must be proved to win the case once the courthouse doors are open.

*Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 12, 913 P.2d 1318, 1322 (citations omitted).[6] In determining whether the occurrence was within the risk of harm created by Jackson's conduct, we recognize the "reality" conceded by Jackson in her summary judgment briefing; two teenage girls may engage in risky behavior when left without adult supervision for an extended period of time. And, to the extent that behavior involves the consumption of alcohol, the developing judgment of teenagers may be dangerously impaired. That impaired judgment may result in intoxication and inappropriate sexual conduct. Consequently, the harm suffered by Brewer was within the zone of risk created by Jackson's failure to provide adult supervision while Brewer was in her custody. Jackson's motion has failed to establish a contrary conclusion as a matter of undisputed fact.

## II. Standard of Care

¶ 23 Although we find that the district court erred in concluding that Jackson owed no duty to Brewer, Jackson is still entitled to judgment if she was not negligent.[7] Negligence is conduct that fails to meet the standard of care. *Salazar v. City of Oklahoma City*, 1999 OK 20, ¶ 20, 976 P.2d 1056, 1064 ("Negligence comprehends lack of that care which is required in a situational setting—a failure to do what a person of ordinary prudence would have done or would not have done under the circumstances."). *See* OUJI 9.2 (" 'Negligence' is the failure to exercise ordinary care to avoid injury to another's person or property. 'Ordinary care' is the care which a reasonably careful person would use under the same or similar circumstances."). How a person acts in discharge

of a duty to another is defined by the standard of care. *Lowery*, 2007 OK 38, n. 3, 160 P.3d at 964 n. 3. "The standard of care prescribes how a person must act or not act in order to satisfy the duty of care." *Morales v. City of Oklahoma City*, 2010 OK 9, ¶ 22, 230 P.3d 869 (footnote omitted).

¶ 24 The standard of care required in this case is what a reasonable person in Jackson's position would have done to prevent the harm to Brewer. *See* Restatement (Second) of Torts § 283. *See also* OUJI 10.5 (Notes on Use) (explaining that no instruction should be given regarding the care required by an automobile driver for the safety of a child because the "essence of the [ordinary care] instruction is that one must anticipate the ordinary behavior of children and exercise greater care for their protection"). "The standard of care is ordinary care, and anticipation of the behavior of children is one circumstance as to what constitutes ordinary care in the situation." *Id.* In determining the ordinary care required in this case, Jackson either knows or is charged with knowing the general qualities and habits of human beings, the common law and any community customs. *See* Restatement (Second) of Torts § 290. "The recognition of the propensities of children is within the common knowledge of the ordinary juror.... It is readily apparent that ordinary care, insofar as young children are concerned, involves the exercise of greater care." *Thomas v. Gilliam*, 1989 OK 59, ¶ 10, 774 P.2d 462, 465. *Cf. Herndon v. Paschal*, 1966 OK 8, ¶ 9, 410 P.2d 549, 551 ("[T]he owner of property in guarding against injuries to children invited on the premises, must exercise more vigilance and caution than would be necessary in the case of adults."). As a result, Jackson is charged with knowing that teenagers are "particularly prone" to careless and reckless behavior, Restatement (Second) of Torts

---

6. The Restatement (Third) of Torts: Liability for Physical Harm § 7(b) (Proposed Final Draft No. 1, 2005), deletes reliance on the risk of harm in defining the scope of a defendant's duty and "creates a default duty of reasonable care whenever a defendant's conduct causes physical harm." Martha Chamallas, *Gaining Some Perspective in Tort Law: A New Take on Third–Party Criminal Attack Cases*, 14 Lewis & Clark L.Rev.

1351, 1379 (2010). Oklahoma has not adopted this view and we decline to do so here.

7. "Where the trial court reaches the correct result for the wrong reasons or on incorrect theories, it will not be reversed." *Jacobs Ranch, L.L.C. v. Smith*, 2006 OK 34, ¶ 58, 148 P.3d 842, 857.

§ 290 cmt. k, that a child is generally incapable of exercising the same judgment and prudence exercised by adults, *id.* § 283A, and that third persons may take advantage of situations created by her conduct to commit crimes, *id.* § 290 cmt. m. Jackson's brief in support of her motion for summary judgment confirms that she actually had this knowledge concerning the behavior of teenagers. "Adolescents have been breaking rules, sneaking out, sneaking around, deceiving parents, etc. since the beginning of time." [8]

¶ 25 Jackson is also charged with any superior knowledge, perception, intelligence and judgment she may have regarding her daughter or Brewer. *Id.* § 289(b). The record supports Jackson's assertion that prior to this incident she had no knowledge that either girl drank alcohol or "partied" with older boys. However, this argument is directed at the specific events that actually occurred in her absence. In determining whether Jackson had any specialized knowledge relevant to this case the proper focus is on facts related to her duty to supervise and the zone of risk created by her failure to properly do so. As to that issue, Jackson knew that while her daughter was in middle school, she had been charged with possession of marijuana, accused by school officials of selling Midol tablets to students and required to attend "school" sponsored by the drug court. Despite the absence of alcohol abuse in these facts, they are relevant to determining whether Jackson used reasonable judgment in exercising control over her daughter and in leaving two teenage girls alone all night. As stated in section 302A of the Restatement:

> [A]n actor is required to know the common qualities and habits of human beings, in so far as they are a matter of common knowledge in the community. The actor may have special knowledge of the qualities and habits of a particular individual, over and above the minimum he is required to know, or he may have special warning that the individual is or is about to be negligent or reckless in the particular case. Even without such special knowledge, the actor is required to know that there is a certain amount of negligence in the world, and that some human beings will fail on occasion to behave as a reasonable [person] would behave. Where the possibility of such negligence involves an unreasonable risk of harm, either to the person who is to be negligent or to another, the actor, as a reasonable [person], is required to take it into account and to govern his [or her] conduct accordingly.

Restatement (Second) of Torts § 302A cmt. c. Viewing the facts in this case in the light most favorable to Brewer, we conclude that determination of whether Jackson breached her duty to Brewer and was negligent in leaving the girls unsupervised cannot be determined as a matter of law, depends on facts which are in dispute and must be made by the trier of fact. *See Salazar,* 1999 OK 20, ¶ 20, 976 P.2d at 1064.

### III. Proximate Cause

¶ 26 Jackson argued in her summary judgment brief that even if she owed Brewer a duty and breached that duty, she was entitled to judgment because her acts and omissions were not the proximate cause of Brewer's injury. *See Minor v. Zidell Trust,* 1980 OK 144, ¶ 14, 618 P.2d 392, 396 (the element of proximate cause is essential to recovery in a negligence case). If Jackson established as a matter of law that there was no causal connection between her negligence and Brewer's injuries, she was entitled to judgment. *See Schovanec v. Archdiocese of Oklahoma City,* 2008 OK 70, ¶ 41, 188 P.3d 158 (issue of proximate cause becomes a question of law only where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury); *Iglehart,* 2002 OK 76, ¶ 15, 60 P.3d at 504 (proximate cause becomes a question of law for the court only when there is no evidence from which a jury could reasonably find a causal nexus between the allegedly negligent act and the injury).

¶ 27 Jackson first focused this argument on what she knew and did not know

8. Defendant Vicky Jackson's Motion for Summary Judgment and Brief in Support, p. 10.

when she left the girls alone with respect to what eventually occurred. Jackson argued that there was no evidence of any prior conduct by either girl that would have caused her to suspect that the girls would illegally consume alcohol in her absence, or that Murray would be invited over and subsequently rape Brewer. Although Jackson may have demonstrated her lack of forewarning with respect to the specific events that ultimately occurred, that is not dispositive. The proximate cause of an event "is that 'which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred.'" *Lockhart v. Loosen,* 1997 OK 103, n. 14, 943 P.2d 1074, 1079 n. 14 (quoting *Johnson v. Mid–South Sports, Inc.,* 1991 OK 17, ¶ 14, 806 P.2d 1107, 1109). "Whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question. Whether an intervening act is foreseeable also calls for an *evaluative determination* by the trier of fact." *Id.* ¶ 11, 943 P.2d at 1080 (footnotes omitted).

 ¶ 28 Jackson failed to show as a matter of undisputed fact that Brewer's intoxication and rape were not foreseeable results from a chain of circumstances set in motion when she left the two girls unsupervised all night with access to alcohol. Jackson's lack of forewarning of the specific harm that occurred could cut off her liability if a jury concludes that the harm to Brewer resulted from acts or omissions too remote from Jackson's negligence.

Proximate cause consists of two complimentary concepts: cause in fact and legal causation. Cause in fact refers to everything which contributed to a result, which would not have occurred without those things. Obviously, without some limiting principal, an infinite number of factual causes could be traced backwards through time for any given event. The concept of legal causation has developed as that limiting principal. Legal causation requires a judgment as to whether liability should be imposed as a matter of law where cause in fact has been established. It is a determination based on both common sense and policy arguments.

*Akin v. Missouri Pac. R.R. Co.,* 1998 OK 102, n. 79, 977 P.2d 1040, 1054 n. 79. Nonetheless, that issue cannot be determined as a matter of law in this case.

 ¶ 29 Jackson also argued that Murray's criminal act was a supervening cause that cut off any liability for her negligence.

This causal connection may be broken by the occurrence of what is known in Oklahoma jurisprudence as a supervening cause. A supervening cause is a new, independent and efficient cause of the injury which was neither anticipated nor reasonably foreseeable. In other words, if the negligence complained of merely affords an opportunity that makes the injury possible and a subsequent independent act causes that injury, the opportunity is not the proximate cause of the injury.

*Id.* ¶ 38, 977 P.2d at 1054–55. We have previously found that Murray's criminal conduct was within the zone of risk created by Jackson's conduct. And, as Jackson's daughter testified, no drinking, late night invitations to young men or rape would have occurred if Jackson had stayed home. It is for a jury to determine the proximate cause of Brewer's injury. *See Lockhart,* 1997 OK 103, ¶ 10, 943 P.2d at 1079.

 ¶ 30 Finally, Jackson pointed out that Brewer did not seek adult supervision or protection. Jackson argued that Brewer's injury resulted from her own consensual and voluntary conduct. The undisputed facts in this case establish that Brewer was under the influence of alcohol at the time of Murray's assault and her impaired judgment would have affected any consent she may have given. *See In re Childers,* 1957 OK CR 44, ¶¶ 7–8, 310 P.2d 776, 777–78. The facts establish at least an initial link between Brewer's inebriation and Jackson's breach of duty. There is a reason the law prohibits having sexual intercourse with a thirteen-year-old girl, regardless of her consent. *See Dill v. State,* 2005 OK CR 20, ¶ 7, 122 P.3d 866, 868 (evidence of "whether the minor orchestrated her encounter with [the defendant] was not relevant because she was thirteen years old and incapable of consent"); OUJI (Criminal) 4–138. Implicit in Jack-

son's characterization of Brewer's injury is that the injury was a result of her own negligence in failing to protect herself. "A child between 7 and 14 years old is presumed not to be capable of being negligent, but ... [t]his presumption may be overcome, ... and [Jackson] has the burden of proving by the greater weight of the evidence that [Brewer] was capable of negligence." OUJI 9.4. Brewer has not done so on the basis of this record. Further, comparative negligence issues are for the trier of fact to determine. Okla. Const. art. 23, § 6 ("The defense of contributory negligence or of assumption of the risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."). Therefore, even if the law recognized Brewer's "consent" to the assault by Murray, the issue of whether her own conduct would preclude her recovery is one for a jury to determine.

### CONCLUSION

¶ 31 The district court erred in granting Jackson's motion for summary judgment, and the order granting that motion is reversed. As a matter of law, Jackson owed Brewer a duty to protect her when she assumed custody of Brewer for the evening. Whether Jackson's allegedly negligent conduct was a breach of that duty when she left her daughter and Brewer alone overnight, without adult supervision, is an issue of fact that remains unresolved. Whether Jackson's conduct was the proximate cause of Brewer's injury is an issue for determination by a jury.

¶ 32 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, J., concurs, and BARNES, P.J., concurs in result.

BARNES, P.J., concurring in result:

¶ 1 I concur in the majority decision to reverse the trial court's order granting summary judgment to Jackson and to remand for further proceedings regarding negligence, proximate cause, and other issues that may stem from Brewer's negligence claim. However, I respectfully submit that the duty owed by Jackson to Brewer under the undisputed facts developed thus far in this case are (1) the general duty Jackson owed to Brewer for Jackson's own conduct, and (2) a duty she owed Brewer to protect her from actions she knew or should have known about her daughter's conduct that could have caused harm to Brewer.

¶ 2 In Oklahoma, whether a duty exists depends on the relationship between the parties and the general risks involved in the common undertaking. *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 10, 795 P.2d 516, 519. Whether a defendant stands in such a relationship to the plaintiff such that the law will impose on her an obligation of reasonable conduct for the benefit of the plaintiff is a question of law. *Id.* As to this general duty, Jackson voluntarily undertook custody of Brewer for the evening and thereby had a special relationship with her. Jackson made specific representations to Brewer's parents that she would supervise their 13–year–old daughter except for a few hours when Jackson went out for pizza and other errands. Moreover, Jackson knew about her daughter's prior substance abuse problems, including her sale of over-the-counter drugs to other minors. The circumstances here are different from those in *J.S. v. Harris*, 2009 OK CIV APP 92, 227 P.3d 1089. In *Harris*, no duty was found where the grandmother neither invited the young boy into her home, nor undertook supervision of him, nor knew about her grandson's risk to the boy. Jackson, however, affirmatively invited Brewer into her home, accepted responsibility of her, and knew about a potential risk her daughter might pose to Brewer.

¶ 3 As expressed by the majority, foreseeabilty is key to duty, and the foreseeability needed for duty is broader in scope than that needed for proximate cause. *See Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶ 11, 913 P.2d 1318, 1322. That harm could befall a minor, unsupervised by an adult for the evening and left alone with another minor known to act in risky ways with respect to substance abuse, is certainly within the zone of risk needed to establish a duty. Consequently, as a matter of law, Jackson was under an obligation of reasonable conduct for Brewer's benefit. Whether she breached that duty by her absence from the home is a question of fact for the trier of fact upon remand.

¶ 4 As to a duty she might have for the acts of a third party, pursuant to Restatement (Second) of Torts § 316 Jackson also had a duty to protect Brewer from possible exposure to alcohol abuse as a result of her relationship with her own daughter and her knowledge about her daughter's substance abuse problems. Again, in *Harris* the grandmother had no knowledge and had no reason to know about the danger her grandson posed to young teenage boys. Conversely, Jackson was fully aware of her daughter's possession of marijuana. She also knew that her daughter sold over-the-counter-drugs to other students to "get kids high." When Jackson invited Brewer into her home and left the minors unattended for the evening, she should have known that her daughter had the propensity to abuse drugs or other substances, such as alcohol. That knowledge imposed a duty on Jackson to warn and protect Brewer from exposure to that potential substance abuse.

¶ 5 For the foregoing reasons, I concur in the majority's Opinion that the trial court order granting summary judgment to Jackson should be reversed and the cause remanded for further proceedings.