**Kay WOFFORD, Appellant,**

v.

**EASTERN STATE HOSPITAL, Appellee.**

No. 69759.

Supreme Court of Oklahoma, Division No. 2.

July 24, 1990.

R. Dow Bonnell, Ronald H. Mook, Tulsa, for appellant.

David H. Sanders, Sanders & Carpenter, Tulsa, for appellee.

SUMMERS, Justice:

We are asked to examine the liability of a mental institution for the release of a patient who later killed his stepfather. We conclude that although the State of Oklahoma recognizes such a cause of action under certain circumstances, in this case summary judgment was properly granted in favor of the Hospital.

Plaintiff is the mother of the patient, and was the wife of the deceased victim. She sued the Hospital for negligent release and failure to supervise. The trial court found the fatal act to be too remote and unforeseeable to render the Hospital liable, and granted summary judgment in its favor. The Court of Appeals reversed and remanded, finding that material factual questions remain unresolved. We agree with the decision and the reasoning of the trial court, and therefore affirm its judgment.

On March 3, 1982, Billy Wofford was released from Eastern State Hospital where he was being treated for schizophrenia. On July 27, 1984, two years, four months and twenty-four days after his discharge from the Hospital, Billy shot and killed his stepfather, Jack Wofford.

Kay Wofford filed this lawsuit against Eastern State Hospital and Drs. Ramirez and Garcia, its employees, alleging that they were negligent in releasing Billy and in failing to supervise him[1] after his release. She testified by deposition that during the two years after his release, Billy failed to take his medication, made threatening phone calls to her and her husband, and suffered delusions that his house was haunted. Wofford further testified that she and her husband were afraid of Billy.

Wofford dismissed her complaint against Dr. Garcia, who had died during the litigation. The court granted summary judgment for Dr. Ramirez, which judgment is now final for lack of appeal. The Hospital also moved for summary judgment, claiming that as a matter of law the killing of Jack Wofford was too remote and unforeseeable to render the Hospital liable. Wofford submitted materials opposing the motion for summary judgment, and "supplemental" materials were submitted to the court by the Hospital on the day of the hearing. It is unclear whether the trial court considered the Hospital's supplemental materials.[2]

The trial court granted the Hospital's motion for summary judgment, ruling:

"as a matter of law the death of Jack Warren Wofford, occuring two years, four months and twenty-four days after the patient's discharge is too remote and unforeseeable to create any liability on the part of the Defendant Hospital."

The Court of Appeals reversed and remanded, and we granted certiorari.

## THE DUTY OF THE DEFENDANT

■ The first and weightiest question is whether under the law of negligence in Oklahoma a mental hospital could have a duty such as to render it liable in damages for the actions of a released patient. In *Nguyen v. State*, 788 P.2d 962 (Okl.1990) we did not negate the possibility of such a duty, but we were not confronted with the issue.[3] It is clearly a case of first impression.

■ Among the traditional elements of the tort of negligence are that there must be (1) a duty owed by one person to another, and (2) a breach of that duty. *Durflinger v. Artilles*, 727 F.2d 888 (10th Cir. 1984); *Thompson v. Presbyterian Hosp.*, 652 P.2d 260 (Okla.1982). "The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed." *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 756 (Okla.1981).

At common law, a person had no duty to prevent a third person from causing physical injury to another. However, a number of courts and the Restatement (Second) of Torts § 315 (1965) have recognized an exception to this general rule. Under this exception, a duty arises if (1) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (2) a special relationship exists between the actor and the other which gives to the other a right to protection. Under the Restatement approach the psychotherapist/patient relationship has been found to be a sufficient basis for imposing a duty on the therapist and the hospital for the benefit of persons injured by a released patient. *Lipari v. Sears, Roebuck & Co.*,

---

1. Nowhere in her brief does Wofford advise us as to any duty on behalf of the Hospital to "supervise" Billy after his release, nor as to how such supervision would have altered the course of events. Issues not supported by argument or relevant authority are deemed abandoned. *Amer. First Abstract v. W. Information System*, 735 P.2d 1187, 1189 (Okla.1987).

2. Wofford did not object to the Hospital's filing of supplemental materials at the time of the motion for summary judgment, nor does she raise this issue on appeal.

3. *Nguyen* held that a hospital sued under the Government Tort Claims Act was not excused from liability by reason of the "discretion of the state" exemption at 51 O.S. § 155(5).

497 F.Supp. 185 (D.Neb.1980); *Tarasoff v. Regents of Univ. of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976).

■ Oklahoma courts have recognized that the existence of a duty depends on the relationship between the parties and the general risks involved in the common undertaking. *See Union Bank of Tuscon v. Griffin,* 771 P.2d 219 (Okla.1989). Whether a defendant stands in such relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff is a question for the court. *Id.* "Duty of care is not a concept that arises only by statute.... Whenever a person is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury." *Union Bank,* 771 P.2d at 222.

Professor Prosser had this to say:

The assertion that liability must ... be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.... [Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law on Torts [3d ed. 1964] at pp. 332–333.)

■ Of such considerations the most important in establishing duty is foreseeability. *Tarasoff,* 131 Cal.Rptr. at 22, 551 P.2d at 342. Foreseeability, or rather a lack thereof, is the essence of the Hospital's defense and the basis of the trial court's judgment here. As a general rule a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which

make the conduct unreasonably dangerous." *Tarasoff,* 131 Cal.Rptr. at 22, 551 P.2d at 342; *see also Atchison v. Kennard,* 199 Okl. 1, 181 P.2d 234, 238–40 (1947).

The case giving birth to the duty of a psychiatrist to protect others from the conduct of his patient is *Tarasoff, supra.* In that case the parents of Tarasoff alleged that the patient, Poddar, confided to a psychologist his intention to kill Tarasoff more than two months before Poddar actually killed her. The parents urged liability based on the failure to warn the potential victim, and the failure to bring about Poddar's continued detention. The defendant hospital claimed no duty to Tarasoff. The court therein ruled that once a psychotherapist determines, or pursuant to his professional standards reasonably should have determined, that a patient presents a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim from that danger.[4] *Id.* 131 Cal.Rptr. at 25, 551 P.2d at 345.

Since *Tarasoff,* courts in several other jurisdictions have agreed that a duty exists in similar situations. In *Davis v. Lhim,* 124 Mich.App. 291, 335 N.W.2d 481, 489 (1983) the court found a duty but limited it only to such potential victims as are "readily identifiable." *See also Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980). In *Soutear v. United States,* 646 F.Supp. 524 (E.D.Mich.1986), a psychiatric patient was released from a state hospital and later attacked his parents with a knife, killing his mother and injuring his father. The father brought suit alleging that the medical personnel at the hospital were negligent in releasing the patient. The court acknowledged the existence of a duty in general but found a lack of foreseeability where the injury occurred three and a half months after the patient's release.

In *Lipari, supra,* Sears sold a gun to a mental patient, who in turn fired the gun

---

4. In addition to the claimed negligent release in *Tarasoff,* the victim's parents also alleged the failure to warn their daughter after the patient confided to the defendant doctor his intention to kill her. The California Evidence Code, unlike Oklahoma's, has an exception to the psycho-therapist-patient privilege if there is good cause to believe the patient is dangerous to another and that disclosure of the communication is necessary to prevent the threatened danger. *Tarasoff,* 131 Cal.Rptr. at 27, 551 P.2d at p. 347.

into a crowded nightclub, injuring the plaintiff and killing her husband. Sears impleaded the United States as third-party defendants, claiming negligence on the part of the U.S. Veteran's Hospital in failing to detain the patient. The district court recognized that the relationship between a psychotherapist and his patient gives rise to a duty for the benefit of third persons. This duty requires that reasonable precautions be taken by the therapist to protect potential victims. The court held that "this duty arises only when, in accordance with the standards of his profession, the therapist knows or should know that his patient's dangerous propensities present an unreasonable risk of harm to others." *Id.* at 193. The *Lipari* court limited the therapist's liability to those persons *foreseeably endangered* by the negligent conduct, but did not limit it to persons whose literal identity could have been known to the hospital's staff. *Id.* at 195.

Courts considering the question of to whom the duty is owed have generally followed the *Lipari* "foreseeability" test rather than the *Davis* "readily identifiable victim" theory. In *Schuster v. Altenberg*, 144 Wis.2d 223, 424 N.W.2d 159, 163 (Wis. 1988), the court found that a psychotherapist may be held liable for failure to warn of side effects of medication, if it is foreseeable that an accident could result. The court found the "readily identifiable victim" theory to be inconsistent with basic Wisconsin tort law. Instead, the court reasoned that "defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable." *Id.* 424 N.W.2d at 164. In *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230, 237 (1983) a released mental health patient caused a car accident which injured the plaintiff. The court found that the defendant had a duty to take reasonable precautions to protect anyone who might foreseeably be endangered by the patient's drug-related mental problems. *See also Durflinger, supra.*

A suit predicated upon negligent release of a patient from a mental institution is a medical malpractice action. *Durflinger*, 727 F.2d at 900. Psychiatry is not an exact science, and a psychiatrist will not be held liable for his patient's violent behavior simply because he failed to predict it accurately. *Soutear*, 646 F.Supp. at 536. But there is no rational basis for insulating this one particular professional calling from liability for negligence occurring in its performance. *Durflinger*, 727 F.2d at 901.

We hold that a psychiatrist has a duty to exercise reasonable professional care in the discharge of a mental patient. The professional standard of care must take into consideration the uncertainty which accompanies psychiatric analysis. This duty arises only when in accordance with the standards of his profession the therapist knows or should know that his patient's dangerous propensities present an unreasonable risk of harm to others. The duty extends to such persons as are foreseeably endangered by the patient's release.

## SUMMARY JUDGMENT

Did the trial court correctly grant summary judgment to the Eastern State Hospital? Summary judgment is a procedure used to reach a final judgment in those cases where there is no dispute as to any material fact. *Flanders v. Crane*, 693 P.2d 602, 605 (Okla.1984). Summary judgment will be denied if under the evidence, reasonable men might reach different conclusions from the facts. *Runyon v. Reid*, 510 P.2d 943, 946 (Okla.1973).

Here, the Hospital's motion for summary judgment was granted because the trial court determined that there were no material factual disputes, and that Billy's behavior was not foreseeable by the Hospital, especially in light of the fact that Billy was released more than two years prior to the incident.

On appeal, Wofford asserts that summary judgment was improper because of factual disputes with regard to Billy's behav-

ior *after* his release. She claims that after his discharge, he behaved strangely by making threatening phone calls, and by saying that his house was haunted. She urges that these instances dispute the Hospital's claim that Billy "did well" for the two years following his release, and that they indicate that Billy should have been supervised. The record reveals that Kay Wofford did not inform the Hospital of Billy's "strange" behavior, nor does it indicate that the Hospital was aware of these later occurrences. There is no evidence in the record that at the *time of his release* the Hospital was aware that the release posed an unreasonable risk of danger to Mr. or Mrs. Wofford or people similarly situated.

The lapse of time involved here establishes the correctness of the trial court's ruling. Billy was institutionalized as a "Person requiring treatment," which is statutorily defined at 43A O.S.1981 § 3(*o*)(2) as, *inter alia,*

> a person who has a demonstrable mental illness and who as a result of that mental illness can be expected *within the near future* to intentionally or unintentionally seriously and physically injure himself or another person. . . .

This is the same statutory language under which Michigan caused the patient to be hospitalized in *Soutear, supra,* the case where a lapse of three and a half months was held too long for the release to have foreseeably constituted the proximate cause of the subsequent tragedy. Nothing in the record of this case is present to establish that Billy should reasonably have been detained at the time of his release in 1984 as one who "can be expected within the near future to" injure another person.

Whether a duty exists is a question of law; whether it has been breached is a question of fact. *Durflinger, supra; McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500, 514 (1979); *Chesapeake v. Bullock,* 182 Va. 440, 29 S.E.2d 228, 230 (1944). The trial court properly held that here no duty existed as a matter of law, that the incident occurring two years, four months and twenty-four days after his dis-

charge was too remote to have been legally foreseeable. The summary judgment's correctness is further established by the absence of evidence that the Hospital knew or should have known of Billy's violent propensities at the time of his release. The Court of Appeals' opinion is hereby vacated and the judgment of the trial court is affirmed.

HARGRAVE, C.J., and LAVENDER, SIMMS and KAUGER, JJ., concur.

OPALA, V.C.J., and ALMA WILSON, J., concur in judgment.

HODGES, J., concurs in result.