MARSHALL v. CITY OF TULSA
2024 OK 78
Case Number: 122429
Decided: 11/06/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2024 OK 78, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

SARAH MARSHALL, Plaintiff/Appellant,
v.
CITY OF TULSA and LOREN POSS, Defendants/Appellees.

ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY 
STATE OF OKLAHOMA

HONORABLE CAROLINE WALL, TRIAL JUDGE

¶0 Tulsa Animal Welfare, a department within the City of Tulsa, placed a pit bull mix with Loren Poss. Poss went on vacation and left dog with pet-sitter, Sarah Marshall. Dog bit Marshall when she attempted to separate a dog fight. Marshall sued City of Tulsa pursuant to the strict liability dog bite statute, 4 O.S. § 42.14 O.S. § 42.14 O.S. § 42.1

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
JUDGMENT OF THE TRIAL COURT AFFIRMED.

Daniel B. Graves, Rachel E. Gusman and Shea A. Bielby, GRAVES MCLAIN PLLC, Tulsa, Oklahoma for Plaintiff/Appellant.

T. Michelle McGrew and Hayes T. Martin, City of Tulsa, Tulsa, Oklahoma for Defendant/Appellee.

OPINION

ROWE, V.C.J.:

BACKGROUND

¶1 In January 2020, Tulsa Animal Welfare ("Tulsa Animal")

¶2 Pursuant to the Foster Agreement, Foster agreed to provide a temporary home for Julian and understood that she was responsible for his care. The Foster Agreement further stated that "any Tulsa Animal Welfare foster animal in [Foster's] care is owned by Tulsa Animal Welfare and can be removed from [Foster's] care at any time by Tulsa Animal Welfare, . . ."

¶3 During the weekend of March 24-27, 2022, Foster planned to go out of town. In accordance with the Foster Agreement, Foster contacted the Foster Coordinator to inquire what should be done with Julian while she was away. The Foster Coordinator did not respond. Ultimately, Foster hired Plaintiff/Appellant Sarah Marshall ("Marshall"), a Rover.com

¶4 When Foster arrived at Marshall's home with Julian, Foster discovered that Julian would be boarded among five other dogs.

PROCEDURAL HISTORY

¶5 The City of Tulsa's Department of City Experience executes responsibilities related to safety and animals through its Tulsa Animal Welfare division. The City of Tulsa ("City") is a political subdivision of the State of Oklahoma, making any tort claim against it or one of its divisions subject to the Government Tort Claims Act, 51 O.S. § 151et seq.51 O.S. § 1564 O.S. § 42.1per se pursuant to Tulsa, Okla. Ord., Title 2, Ch. 1, § 101(A)(4);

¶6 City filed its Amended Motion for Summary Judgment arguing Marshall's claims failed as a matter of law because (1) Marshall was an owner of Julian at the time of the dog bite under 4 O.S. § 42.14 O.S. § 42.1

¶7 The trial court denied Marshall's Partial Motion for Summary Judgment, finding as a matter of law Marshall was an owner of Julian under 4 O.S. § 42.1

STANDARD OF REVIEW 

¶8 The appellate standard of review of summary judgment is de novo. Boyle v. ASAP Energy, Inc., 2017 OK 82408 P.3d 183John v. St. Francis Hospital, Inc., 2017 OK 81405 P.3d 681Lowery v. Echostar Satellite Corp., 2007 OK 38160 P.3d 959Tiger v. Verdigris Valley Electric Coop., 2016 OK 74410 P.3d 1007

¶9 Even when the facts are not controverted, if reasonable persons may draw different conclusions from the facts, summary judgment must be denied. Bird v. Coleman, 1997 OK 44939 P.2d 1123Brown v. Okla. State Bank & Trust Co., 1993 OK 117860 P.2d 230Stuckey v. Young Exp. Co., 1978 OK 128586 P.2d 726

ANALYSIS

A. When 4 O.S. § 42.1 and Tulsa Municipal Ordinance Title 2, Ch. 1, § 100
Are Read Contemporaneously, Marshall Is Considered an Owner for 
Purposes of Strict Liability Under 4 O.S. § 42.1. 

¶11 Oklahoma's dog bite statute is derived from the common law and is liberally construed. Nickell v. Sumner, 1997 OK 101943 P.2d 625See also 12 O.S. § 225 O.S. § 29Id. ¶5, 943 P.2d at 627. The elements of strict liability under 4 O.S. § 42.1Hampton By and Through Hampton v. Hammons, 1987 OK 77743 P.2d 1053Hood v. Hagler, 1979 OK 163606 P.2d 5484 O.S. § 42.1

¶12 City relies on Hampton By and Through Hampton v. Hammons, 1987 OK 77743 P.2d 1053Hampton, after a young boy was bitten by the neighbor's son's dog, the boy's parents sued, claiming the neighbor was the owner of the dog under 4 O.S. § 42.1Id. ¶ 24, 743 P.2d at 1059. As such, we looked at § 42.1 and considered Tulsa Municipal Ordinance, Title 2, Ch. 1, § 1(d) (1973).

¶13 We determined that "[w]hen both the legislature and a home rule municipality have passed regulations in the same area, the test the municipal ordinance must survive in order to supersede the statute depends upon whether the power being exercised is purely municipal, or whether there is a wider public interest involved." Hampton, ¶ 26, 743 P.2d at 1060. We determined matters concerning dog attacks is one area of concurrent local and state concern. Id. "Only when the local ordinance and state statute contain express or implied conditions inconsistent and irreconcilable with one another will they be characterized as conflicting." Id.

¶14 We found § 42.1 and Tulsa Municipal Ordinance, Title 2, Ch. 1, § 1(d) (1973) neither inconsistent nor irreconcilable, reasoning "the Tulsa ordinance includes the whole of [the state statute's] definition and merely expands it to include persons who harbor or exercise control over a dog." Id. And where "potentially conflicting legislation may be construed in such a way as to give effect to both and do violence to neither, that construction will be adopted rather than one leading to a conclusion that the two are at odds." Id. We construed § 42.1 and Tulsa Municipal Ordinance Title 2, Ch. 1, § 100 (1973) contemporaneously to hold the neighbor was an owner for purposes of § 42.1.

¶15 Marshall argues she was not an owner of Julian but only a temporary boarder and that City has the legal right of possession of Julian. Marshall relies upon the Court of Civil Appeals' ruling in Hass v. Money, 1993 OK CIV APP 38849 P.2d 1106Money, while owners were on vacation, they boarded their dog at an animal clinic. Id. ¶ 1, 849 P.2d at 1107. An employee of the animal clinic was bitten by owners' dog while walking him and filed suit against owners under 4 O.S. § 42.1Hampton to argue the employee fell within the definition of an owner at the time the dog bit the employee. The Court of Civil Appeals, however, erroneously determined that Hampton's "broad definition of owner is a result of construction of § 42.1 and a Tulsa municipal ordinance dealing with vicious dogs." Id. ¶ 7, 849 P.2d at 1107-08 (emphasis added). The Court of Civil Appeals' specious analysis of Hampton led the court to find owner in § 42.1 could not be extended and the definition of owner was restricted to a person having the legal right to possession. Id.

¶16 The Court of Civil Appeal's analysis in Money is incorrect. First, Money improperly concluded Hampton's analysis was inapposite. Specifically, Money's determination that the Hampton Court relied on a definition of owner under a subsection of the Tulsa Municipal Ordinance limited to vicious dogs was incorrect. Money, ¶ 7, 849 P.2d at 1107. The definition of owner Hampton relied upon was applicable to all animals--vicious or not--under the Tulsa Municipal Ordinance Title 2, Ch. 1 § 1(d) (1973).Money's conclusion that the definition of owner is restricted to a person having the legal right to possession is misguided and inconsistent with Hampton--and with our holding today. Accordingly, Money is hereby overruled.

¶17 We find Hampton's analysis instructive to the issue before us. Section 42.1 does not define owner, however, Tulsa Municipal Ordinance Title 2, Ch. 1, § 100 (2021) ("the Ordinance") may aide us in determining whether Marshall was an owner at the time of the dog bite for purposes of § 42.1. The Ordinance defines owner as "any person, firm or corporation having the care or maintenance of, keeping or harboring, or in possession and control or custody of any dog, cat, animal or domestic animal."

¶18 Here, City is a charter city with the power to "adopt and enforce all ordinances necessary or proper to protect the public peace, health, order, morals, and safety, and to promote the general welfare of the City of Tulsa and its inhabitants." Article I, Section 3 of City of Tulsa Charter.Hampton, that "matters concerning dog attacks is one area of concurrent local and state concern, and that where such ordinances exist and are not irreconcilable with the state statute, they are to be construed cumulatively." Hampton, ¶ 27, 743 P.2d at 1060. The Ordinance's definition of owner is neither inconsistent nor irreconcilable with § 42.1. Therefore, the Ordinance will operate to extend owner in § 42.1 to include any person expressly covered under the Ordinance.

¶19 The Ordinance defines owner as "any person . . . having the care or maintenance of, keeping or harboring, or in possession and control or custody of any dog. . . ." Marshall was caring for, keeping, and had possession of Julian while Foster was away for the weekend. Although Marshall had temporary possession and custody of Julian, she was ultimately responsible for his care and maintenance--as did Foster, making her an owner.

¶20 This conclusion is further supported by the language of § 42.1. When § 42.1 was enacted, the Legislature contemplated that there could be more than one owner of a dog for purposes of § 42.1. More specifically, § 42.1 states "[t]he owner or owners of any dog shall be liable for the damages..." 4 O.S. § 42.1

¶21 Accordingly, we hold that when 4 O.S. § 42.14 O.S. § 42.1

B. City of Tulsa Does Not Owe Marshall A Duty Because She Is Not a 
Foreseeable Plaintiff. 

¶22 In addition to strict liability, Marshall also asserts a common law negligence claim against City. In its Motion for Summary Judgment, City argued there was no duty owed to Marshall because Marshall's harm was not foreseeable. Moreover, City argued Marshall failed to produce any evidence that Julian ever showed signs of aggression. Marshall contended City owed her a duty because it was foreseeable she would be injured due to Tulsa Animal's failure to formally evaluate Julian for aggression. Marshall also argued Foster was an agent of City, making City responsible for Foster's actions. Ultimately, the trial court granted City's Motion for Summary Judgment.

¶23 The material elements of a negligence claim are: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. Bird v. Pruett's Food, Inc., 2023 OK 92Wofford v. Eastern State Hosp., 1990 OK 77795 P.2d 516See 76 O.S. § 1Delbrel v. Doenges Bros. Ford, Inc., 1996 OK 36913 P.2d 1318

¶24 In determining the legal question of the existence of a duty of care, "the court considers policy factors that lead the law to say a particular plaintiff is entitled to protection." Lowery v. Echostar Satellite Corp., 2007 OK 38160 P.3d 959Iglehart v. Bd. of County Commissioners of Rogers County, 2002 OK 7660 P.3d 497Id. Foreseeable risk of harm establishes the zone of risk to assess whether defendant's conduct created a generalized and foreseeable risk of harm to plaintiff. Id. 

¶25 Foreseeability, as it relates to duty, is evaluated differently than foreseeability as it relates to the proximate cause analysis. Delbrel, ¶ 12, 913 P.2d at 1322. Foreseeability as an element of proximate cause is a much more specific factual requirement that must be proved to win the case once the courthouse doors are open. Id. Whereas foreseeability as a component of duty involves a lesser inquiry, requiring the court, as a threshold legal matter, to evaluate the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence. Id.

¶26 Marshall contends her injury was foreseeable and within the zone of risk because City owes a duty to the general public to act with ordinary care. Marshall is correct that City owes a duty to use ordinary care when placing an animal for adoption or in a foster home; however, that duty does not extend to all persons that reside within the City of Tulsa. As such, Marshall's residence within Tulsa city limits does not automatically make her a foreseeable plaintiff.

¶27 Marshall relies upon Tulsa Animal's policy which states that prior to placing a dog with a foster or for adoption, Tulsa Animal will conduct a behavioral evaluation. Marshall argues Tulsa Animal failed to conduct a formal behavior evaluation of Julian. Tulsa Animal's policy specifically provides: "All animals being considered for adoption or rescue placement must receive a preliminary health and behavior evaluation."

D. Perform brief behavior evaluation.

a. Any aggression toward people at all -- Do not hold for adoption
b. Too fearful -- Do not hold for adoption
c. Not social -- Consider not holding for adoption
d. Aggressive toward other animals -- Do not hold for adoption
e. Food aggressive -- Do not hold for adoption unless it is a puppy that can be...

Marshall contends Tulsa Animal had a duty to "guard against handing out dangerous dogs as shown by its own Policy. . ."

¶28 To the extent Tulsa Animal did not conduct a behavior evaluation of Julian, Marshall is still not a foreseeable plaintiff. Marshall presented no evidence that Julian displayed characteristics or behaviors that should have kept Tulsa Animal from holding him for adoption in violation of its policy. To the extent Julian showed signs of aggression, perhaps Marshall would be a foreseeable plaintiff--as any person who came into contact with Julian could be considered a foreseeable plaintiff. This, however, would require a showing that City knew or should have known the dog was aggressive.See Lowery v. Echostar Satellite Corp., 2007 OK 38160 P.3d 959

¶29 Lastly, Marshall contends she was a foreseeable plaintiff because Foster was an agent of Tulsa Animal, making Tulsa Animal ultimately responsible for Foster placing Julian with Marshall. Marshall also contends City's argument that it could not foresee Julian would be boarded at Marshall's home is flawed. Specifically, Marshall points to Foster's inquiry with Tulsa Animal regarding guidance on what to do with Julian while she was out of town for the weekend to demonstrate Tulsa Animal was on notice Julian would be cared for by someone other than Foster. It is Marshall's contention that Tulsa Animal's notice and failure to instruct Foster on what to do with Julian made Marshall a foreseeable plaintiff.

¶30 It is undisputed that Foster "was acting under a policy for cruelty and neglect cases which declared [Foster] an 'extension of [Tulsa Animal].'"See N.H. v. Presbyterian Church, 1999 OK 88998 P.2d 592Cont'l Supply Co. v. Sinclair Oil & Gas Co., 1924 OK 1166235 P. 471

¶31 On summary judgment, the defendant contends that the facts and circumstances are undisputed and submits evidentiary material supporting its contention. The plaintiff must respond with some evidentiary material that would demonstrate a need for a trial on the issue. Here, Marshall needed to present evidence that City knew or should have known Julian was aggressive such that Marshall's injury was foreseeable. She failed to do so. Accordingly, we find City did not owe a duty to Marshall because she did not fall within the zone of risk that would make her a foreseeable plaintiff.

CONCLUSION 

¶32 We find the analysis in Hampton By and Through Hampton v. Hammons, 1987 OK 77743 P.2d 10534 O.S. § 42.1

¶33 In a common law negligence claim, the existence of a duty is established when a plaintiff's harm was reasonably foreseeable. Marshall's harm was too far attenuated to make Marshall a foreseeable plaintiff; therefore, City owed no duty to Marshall.

¶34 The trial court's order granting City's Motion for Summary Judgment and denying Marshall's Partial Motion for Summary Judgment is hereby affirmed.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION; 
JUDGMENT OF THE TRIAL COURT AFFIRMED.

Kane, C.J., Rowe, V.C.J., Kauger, Winchester, Edmondson, Gurich, Darby and Kuehn, JJ., concur.

Combs, J., concurs in result.

FOOTNOTES

Id.

et seq. of this title shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.

B. Except as provided in subsection H of this section, and not withstanding any other provision of law, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs."

51 O.S. § 156

4 O.S. § 42.1

"A. It shall be unlawful and an offense under the terms of this title for any person within the corporate limits of the City of Tulsa to:

4. Harbor, keep or have possession of any dangerous animal, except as provided in Chapter 6 of this title. Every person violating subparagraph 101.A.4 shall be guilty of an offense and, upon conviction, shall be punished by imprisonment in the City Jail for a period of not exceeding six (6) months or by a fine of not more than One Thousand Two Hundred Dollars ($1,200.00) excluding costs, fees and assessments, or both such fine and imprisonment.

"A. It shall be the duty of WIN and the Chief of Police to investigate any proper claim that an animal is dangerous within the meaning of this chapter. Should the investigating official determine that a dangerous animal poses an immediate threat to the public health or safety, that official shall immediately seize and impound the animal, or otherwise seek an order from the court that the animal be impounded. The official shall also refer the matter to the City Attorney for approval of a verified complaint requesting a finding by the court that the impounded animal is dangerous and aid in the proceedings instituted in the Municipal Criminal Court against any person for harboring a dangerous animal.

B. If the court shall fail to find, upon a preponderance of the evidence presented in an evidentiary hearing, that the animal seized and impounded is a dangerous animal, then the court shall order WIN to return the animal to its Owner. If such animal is found by the court to be a dangerous animal, the court shall order WIN to euthanize the animal.

C. At the option of the Owner, but subject to the approval of WIN, an animal impounded pursuant to this section may be confined in a private kennel or veterinary clinic during the pendency of the dangerous animal action. The operators of the facility shall then assume full liability for the confinement and maintenance of such animal and shall not release it without first being authorized by WIN or the court. All fees for such impoundment shall be the responsibility of the Owner. In no event shall the City of Tulsa be liable for costs or fees charged by the private facility. Further, the City may assess to the Owner the cost of transporting the animal to the privately-operated impoundment facility."

"It shall be unlawful and an offense for an Owner of a dangerous dog to permit the dog to be outside the proper enclosure unless the dog is muzzled and restrained by a substantial chain or leash and under physical restraining of a responsible person over sixteen (16) years of age. The muzzle shall be made in a manner that will not cause injury to the dog or interfere with its vision or respiration but shall prevent it from biting any person or animal."

per se claim at the summary judgment hearing.

12 O.S. § 2

25 O.S. § 29

4 O.S. § 42.1

"Owner as used herein shall mean and include the owner of any dog, cat, animal or domestic animal as herein defined and also every other person having the care or custody of or harboring, keeping or maintaining any dog, cat, animal or domestic animal as herein defined, except a kennel proprietor as herein defined...."

Hampton v. Hammons, 1987 OK 77743 P.2d 1053

To adopt and enforce all ordinances necessary or proper to protect the public peace, health, order, morals, and safety, and to promote the general welfare of the City of Tulsa and its inhabitants;"