OSCN Found Document:Lawrence v Clubcorp NV II, LLC

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Lawrence v Clubcorp NV II, LLC
2025 OK CIV APP 17
Case Number: 122276
Decided: 12/19/2024
Mandate Issued: 05/29/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 17, __ P.3d __

 

SHAWN LAWRENCE and HEATHER LAWRENCE, husband and wife, Plaintiffs/Appellants,
vs.
CLUBCORP NV II, LLC, d/b/a Oak Tree Country Club, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Daniel V. Carsey, Alyssa M. Gillette, HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C. Oklahoma City, Oklahoma For Plaintiffs/Appellants

Victor F. Albert, Heath T. Albert, PORTER HEDGES, LLP Oklahoma City, Oklahoma For Defendant/Appellee

DEBORAH B. BARNES, CHIEF JUDGE:

¶1 Shawn and Heather Lawrence (the Lawrences) seek review of the district court's Judgment filed in May 2024 granting the motion for summary judgment of ClubCorp NV II, LLC, d/b/a Oak Tree Country Club (Oak Tree). Based on our review, we reverse and remand for further proceedings.

BACKGROUND

¶2 In their amended petition filed in January 2023, the Lawrences asserted the back yard of their home abuts a "golf course, namely a driving range," and that golf balls from the driving range -- which runs parallel to their back property line -- have caused damage to their home and caused them to be "fearful that an impact from the golf ball to a person in the backyard would cause a serious injury. Due to the fear of injury, [the Lawrences] can no longer enjoy the use of their backyard." The Lawrences also stated they have two young children "who can no longer play in their backyard for fear of injury from golf balls . . . ."

¶3 The Lawrences asserted a theory of negligence, stating that Oak Tree has "negligently failed to install and maintain an adequate Safety Net behind [their] home to prevent golf balls from its patrons from entering and damaging [their] Home." 

¶4 In its Answer, Oak Tree admitted it operates a golf course, including a driving range that abuts the Lawrences' property, and it further admitted "that it had and has a net positioned on the boundaries of its driving range." However, in general, Oak Tree either denied the Lawrences' remaining allegations or asserted it is without sufficient information to admit or deny them. Among other affirmative defenses, Oak Tree asserted that the Lawrences "assumed the risk of any alleged harm."

¶5 In December 2023, Oak Tree filed a motion for summary judgment. Oak Tree asserts in this motion that while, "[a]t times, golf balls have exited the driving range and entered [the Lawrences'] property," the Lawrences "knew all of this before they purchased the house and property." In Oak Tree's motion, and in the Lawrences' response, it is undisputed that the driving range was in existence long before the Lawrences purchased the property in 2020, and long before the house was constructed sometime between 2016 and 2018. 

¶6 Oak Tree asserts the Lawrences "knew before they purchased the property that the backyard abutted the common area and driving range, and that golf balls would enter the property." The Lawrences dispute this assertion "to the extent the statement implies [they] knew before buying the property the actual number of golf balls that would enter the property." In their response, the Lawrences, citing various evidentiary materials, assert that "[d]uring peak-golf season, over a hundred golf balls impact [their] yard or home a month." They assert that while they "anticipated a few golf balls would exit the driving range, neither expected hundreds of golf balls" would "enter their property." 

¶7 A hearing was held on Oak Tree's summary judgment motion on May 2, 2024. According to counsel for Oak Tree, Oak Tree increased the height of the netting sometime between the filing of the motion for summary judgment and the date of the hearing. According to its counsel, Oak Tree increased the height of the netting from 40 feet to 60 feet between some, but not all, of the above-mentioned poles. Counsel for the Lawrences agreed that Oak Tree had increased the height of some of the netting to 60 feet and stated that his clients were "very appreciative that the club has taken such steps here recently," steps that had a definite effect on reducing the number of balls landing on two-thirds of the Lawrences' property. However, the Lawrences' counsel stated that "one third of the property" is still "getting pelted" with "dozens of golf balls still coming through and hitting the yard and hitting the property" as that portion of the property remains protected by only a 40-foot net. Counsel for the Lawrences stated that although "the facts have changed because recent construction of the netting," the netting still "goes from 60 to 40 [feet]" in a location such that "1/3 of the property" is still "getting pelted with golf balls." He stated, "And it's not one or two or five or ten, we're talking hundreds." He stated that "the volume of golf balls that's coming through" is "unreasonable and unwarranted," and asserted that triable issues remained in dispute because of the unreasonable "numerosity" of the golf balls landing on the Lawrences' property.

¶8 In its Judgment filed in May 2024, the district court granted Oak Tree's motion for summary judgment. The Judgment states that "final judgment is granted in favor of [Oak Tree] on all of [the Lawrences'] claims."

¶9 The Lawrences appeal.

STANDARD OF REVIEW

¶10 "Summary judgments are disfavored and will be affirmed only if the appellate court determines there is no dispute as to any material fact and that the party is entitled to judgment as a matter of law." Toch, LLC v. City of Tulsa, 2023 OK 69532 P.3d 28

Summary judgment is used to reach a final judgment where there is no dispute as to any material fact, Indiana Nat'l Bank v. Dep't of Human Servs., 1993 OK 101857 P.2d 53Sellers v. Okla. Pub. Co., 1984 OK 11687 P.2d 116de novo. Young v. Macy, 2001 OK 421 P.3d 44de novo review we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law." Id.

Thomas v. Wheat, 2006 OK CIV APP 106143 P.3d 767

All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the nonmoving party.

Even when the facts are not controverted, if reasonable persons may draw different conclusions from the facts, summary judgment must be denied. When genuine issues of material fact exist, summary judgment should be denied, and the question becomes one for determination by the trier of fact. Because the district court has the limited role of determining whether there are such issues of fact, it may not determine fact issues on a motion for summary judgment nor may it weigh the evidence.

Marshall v. City of Tulsa, 2024 OK 78558 P.3d 1220

ANALYSIS

¶11 The Lawrences argue that the sheer number of golf balls landing on their yard and house is unreasonable and beyond what any purchaser might have anticipated. Oak Tree does not directly respond to what the Lawrences' counsel referred to at the hearing as the "numerosity" of the golf balls landing on their property; instead, it argues that, as to the negligence theory, it does not owe the Lawrences a duty "to shield them from the risks inherent to purchasing property directly abutting a driving range," and, as to the nuisance theory, the Lawrences' claim "fails because there was no unlawful use of the driving range or duty owed by [Oak Tree]" and "because [the Lawrences] came to the alleged nuisance." We address these theories separately below. As stated by one court, "[a]lthough there is a significant similarity and interplay between negligence and nuisance, these [theories of recovery] should be treated separately so as to avoid confusion of issues." Nussbaum v. Lacopo, 265 N.E.2d 762, 764 (N.Y. 1970) (action against a country club involving allegations of errant golf balls).

I. Negligence

¶12 "The material elements of a negligence claim are: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to perform that duty; and (3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." Bird v. Pruett's Food, Inc., 2023 OK 92

The existence of a duty of care is the threshold question in any negligence action. Wofford v. Eastern State Hosp., 1990 OK 77795 P.2d 516See 76 O.S. § 1Delbrel v. Doenges Bros. Ford, Inc., 1996 OK 36913 P.2d 1318

Marshall, 2024 OK 78Thomas, 2006 OK CIV APP 106Wofford). "[W]hether a defendant stands in such a relationship to a plaintiff that the law will impose an obligation of reasonable conduct for the benefit of a plaintiff is a matter of law." Thomas, ¶ 11, 143 P.3d at 769 (citing Wofford).

¶13 Oak Tree asserts it owes no duty to the Lawrences because they voluntarily chose to purchase a house on a lot abutting a driving range. Oak Tree asserts:

The risk of golf balls entering the property is one of the natural risks assumed by individuals who choose to purchase a house that abuts a driving range, a prevailing purpose for which is to strike golf balls far distances. This is especially true in Oklahoma, where no individual can control, much less predict, the direction and intensity of the wind.

[The Lawrences] knew that the house they purchased was located on the driving range at the Oak Tree East course, and they knew golf balls would enter the premises of the property when they purchased it. This was a tradeoff they made to live on a golf course, close to a country club. That they no longer will tolerate the known and obvious risk associated with living in a house on a lot directly abutting a driving range does not mean, all of a sudden, that [Oak Tree] owes a duty to protect them from that inherent risk. [The Lawrences] voluntarily purchased the property with full knowledge that proximity to the driving range would mean that golf balls could enter the property line of their yard. Therefore, no legally cognizable duty by [Oak Tree] to [the Lawrences] exists.

¶14 The Lawrences respond by stating it may be true they assumed the risk of some number of errant shots landing on their property; however, they assert they did not assume the risk of an unreasonable number of golf balls -- in particular, "hundreds of golf balls" -- landing on their property. Instead, they assert they assumed that their property would be reasonably protected. Ms. Lawrence, for example, stated at her deposition that she did not believe "you can ever ensure" there will be zero golf balls that land on their property "because of where we are"; however, she opined that the current number is "too much." She stated if the number was reduced to "one or two" a week, that "over time . . . I would get that comfort level" to, inter alia, use her back yard and allow her children to play outside.

¶15 Regarding the number of golf balls that have landed on their property, the Lawrences attached to their response to the motion for summary judgment a list of the number of "Balls Picked Up" per week going back to August 2021, together with pictures of numerous golf balls in cardboard boxes apparently stored in their garage. According to this evidence, the Lawrences have picked up as many as 42 golf balls in a week and have often picked up approximately 20 to 40 golf balls per week. Consistent with this evidence, Ms. Lawrence testified the number "feels like 20 or 30 a week and . . . maybe more . . . ."

¶16 Based on the Lawrences' deposition testimony, a portion of these golf balls land on their home and have caused property damage. Indeed, the Lawrences attached an estimate from Cline Construction OK, LLC, estimating repairs, including a roof replacement, in the amount of $67,282.31. Based on the deposition testimony, one daughter's bedroom window was broken by a golf ball on two separate occasions. Ms. Lawrence testified that her children are

scared, just like I am. There's many instances when we've been inside the house that golf balls have come into our patio area in the back of the house, have directly, without even bouncing, hit our window that faces the backyard, and that is the most scary because I'm afraid it's going to break glass. Like, we've had my daughter['s] . . . window[] broken from a golf ball, several.

Ms. Lawrence testified that there are "times that [she is] working at home" when she has experienced golf balls "hitting the roof or the side . . . of the house, like, right where [she is] on that corner, too, it's so scary."

¶17 Mr. Lawrence stated he primarily wants the net raised "so someone doesn't get hurt. That's really 99 percent of this, I don't want someone to get hurt." He testified that his "neighbor got hit hard and my landscapers have been hit[.]" He stated that when his neighbor "got hit, it knocked the wind out of her, and she doesn't even like to use her backyard anymore because it was just so shocking." Mr. Lawrence stated that these "are not, like, rolling balls, these are balls that are coming in fast." He stated the golf balls "are coming in with velocity, and . . . it's terrifying to think that our girls could get hit by one of those in the face and what would happen."

¶18 The Lawrences also presented a copy of an email from a neighbor to the Head Golf Professional at Oak Tree in which the neighbor stated, in part: "Anything you could do and/or suggest in the meantime? I'm nervous a ball is going to hit my 4 year old in the head while she's innocently playing in the backyard. Dozens of balls in a single afternoon is quite the hook or slice, in my opinion."

¶19 Kyle Mooney, an employee of Oak Tree, stated he could "certainly see how altering the height and location of" the net "could aid in diminishing the amount of balls that leave the property[.]" He acknowledged that at least one purpose of the net was to "provide additional protection for the homes behind to prevent as many balls as possible from leaving the facility." He also acknowledged that Oak Tree undertook maintenance of the net: for example, "following reporting of damage to it following a [certain] windstorm[.]" Mr. Mooney also testified that approximately a week prior to his deposition on November 14, 2023, Oak Tree "remove[d] the pin that was located directly behind [the Lawrences'] home" where golfers on the driving range could aim their shots. He also stated there is a "wind factor" "that increases the likelihood" of shots landing outside of Oak Tree's property line and in the direction of the Lawrences' property.

¶20 Oak Tree has not presented this Court with any cases in which a court has concluded that an owner of a driving range owes no duty to neighboring property owners -- i.e., that such property owners are not entitled to any efforts on the part of the driving range to protect properties along its boundaries. See Marshall, ¶ 24, 558 P.3d at 1228 ("In determining the legal question of the existence of a duty of care, the court considers policy factors that lead the law to say a particular plaintiff is entitled to protection." (internal quotation marks omitted) (citation omitted)).

¶21 This Court has reviewed cases from other jurisdictions in which the defendant asserted the defense that it had obtained a prescriptive easement giving it the right to allow golf balls to land on a plaintiff's neighboring property. For example, in Tenczar v. Indian Pond Country Club, Inc., 199 N.E.3d 420 (Mass. 2022), the court stated that, "[t]o the extent that the ordinary use of the defendants' golf course requires land beyond the course boundaries to accommodate the travel of errant shots, it is incumbent on the defendants to acquire either the fee in the additional land itself, or the right to use the additional land for that purpose," i.e., by "reserv[ing] an easement[.]" Id. at 434 (citation omitted). See also Beers v. Brown, 129 P.3d 756(Or. Ct. App. 2006). However, an assertion of a prescriptive easement has not been made in this case.

¶22 Cases from other jurisdictions involving properties foreseeably hit by golf balls indicate that a golf club does owe a duty to undertake reasonable conduct to prevent injury and damage. See, e.g., Behar v. Quaker Ridge Golf Club, Inc., 118 A.D.3d 833, 835 (N.Y. App. Div. 2014) (Summary judgment was improper because "the plaintiffs established, prima facie, that Quaker Ridge breached its duty to exercise reasonable care in the maintenance and use of its property to prevent foreseeable injury that might occur on adjoining property by failing to take precautions in design and location, in the form of play, or in the erection of protective devices as a safeguard against injury to the plaintiffs' property[.]"); Ellery v. The Ridge Club, 2005-Ohio-1873, ¶ 18, No. C-040189, 2005 WL 927160, at *5 (Ohio Ct. App. April 22, 2005) (After reviewing more than half a dozen cases involving golf courses, the court concluded: "Generally, the owner/operator of a golf course has a duty to use reasonable care in light of all the circumstances to protect abutting property owners from the golf course's operations.").

¶23 Under somewhat different circumstances concerning an individual golfer's liability when a painter working on a nearby house was struck by a golfer's errant shot, a separate division of this Court explained: "Perhaps the most important consideration in determining whether a duty exists is foreseeability. The general rule is that 'a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.'" Thomas, ¶ 12, 143 P.3d at 769 (quoting Wofford). It further stated that "foreseeability, as an element of duty of care, creates a 'zone of risk' and is a minimum threshold legal requirement for opening the courthouse doors. 'Foreseeability as an element of proximate cause is a much more specific factual requirement that must be proved to win the case once the courthouse doors are open.'" Thomas, ¶ 12, 143 P.3d at 770 (quoting Delbrel). See also Marshall, ¶¶ 24-25, 558 P.3d at 1228-29. The Court examined cases "illustrat[ing] that a golfer's duty depends on the particular facts of each case and may sometimes extend beyond the intended flight of the ball to encompass a wider zone of risk." Thomas, ¶ 14, 143 P.3d at 770 (citation omitted).

¶24 The Court also addressed the defense of assumption of risk, stating:

When someone is injured by an errant golf ball inside the bounds of a golf course, it may be generally presumed as a matter of law that they, in venturing onto the course during play, have assumed the risk of injury. However, when someone is injured by an errant golf ball while outside the bounds of a golf course, application of the defense depends upon the specific facts of each case.

Id. ¶ 18, 143 P.3d at 771. The Court further stated:

There is a presumption that a plaintiff assumed the risk of injury from an errant golf ball if he or she is within the bounds of a golf course, but no such presumption applies if the plaintiff is outside the boundary. In such a case, the defendant has the burden of proving this affirmative defense.

Id. ¶ 19, 143 P.3d at 771. The Thomas Court concluded that "a substantial controversy exists regarding Defendant's alleged negligence and Plaintiff's alleged assumption of the risk," and it reversed the district court's grant of summary judgment. Id.

¶25 We conclude the Lawrences are within a zone of risk of the driving range because their health and property are foreseeably endangered by the normal use of the driving range. The foreseeability of harm is exemplified by, among other things, the actions already undertaken by Oak Tree to protect the Lawrences' property, such as the erection of a net and the maintenance of that net; the email, described above, from a neighbor to the Head Golf Professional at Oak Tree; the acknowledgement by Mr. Mooney of the "wind factor" "that increases the likelihood" of apparently even straight shots landing outside of Oak Tree's property line and in the direction of the Lawrences' property; and the various evidentiary materials detailing the frequency of the occurrences. Therefore, we are unable to conclude that Oak Tree owes no duty whatsoever to the Lawrences.

¶26 Indeed, Oak Tree's position that it owes no duty to the Lawrences because they voluntarily chose to purchase a house on a lot abutting a driving range improperly collapses two distinct issues: (1) whether a duty exists, and (2) the defense of assumption of risk. As explained by the Oklahoma Supreme Court:

The Oklahoma Constitution provides in Article 23, Section 6, that "[t]he defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be questions of fact, and shall, at all times, be left to the jury." Following the plain meaning of these words, this Court has generally required the issue of assumption of risk to be submitted to a jury.

Two exceptions to Article 23, Section 6's mandate have been recognized. . . . [T]he defense of assumption of the risk need not be presented to the jury if (1) the plaintiff fails to present evidence showing primary negligence on the part of the defendant, or (2) if there are no material facts in dispute, and reasonable minds exercising fair and impartial judgment could not reach differing conclusions. . . . [W]e [have] cautioned [that] "[t]he exceptions to Article 23, Section 6's constitutional assurance of a jury's determination of the defense of assumption of the risk must be narrowly read, lest they swallow the rule."

Reddell v. Johnson, 1997 OK 86942 P.2d 200

¶27 As described above, the Lawrences' property may border Oak Tree's property, but Oak Tree neither owns the Lawrences' property nor has it made any assertion that it has obtained a prescriptive easement giving it the right to allow golf balls to land on the Lawrences' neighboring property. Moreover, as concluded above, Oak Tree owes the Lawrences a duty of reasonable care. Finally, reasonable minds exercising fair and impartial judgment could reach differing conclusions on the issue of assumption of risk, particularly on the issue of whether, as stated by the Lawrences' counsel at the hearing, "the volume of golf balls that's coming through" and over the safety net already in place before they moved in constitutes an unreasonable number of golf balls landing on their property that is beyond any risk they may have anticipated. We conclude a genuine dispute of fact exists pertaining to whether the Lawrences assumed the risk of these particular circumstances: i.e., of over 1,300 golf balls hitting their property at high speeds yearly. Reddell, ¶¶ 12-13, 942 P.2d at 203.

¶28 Oak Tree concludes its summary judgment motion by stating that the Lawrences "voluntarily elected to move next door to a driving range. Now, they complain about golf balls entering their property[.]" It states this was "a risk inherent" in the "reasonable operation of the driving range," and asserts: "The law cannot be that [the Lawrences] are entitled to purchase a house and property, while knowing the inherent risks, and later strongarm a lawfully and reasonably operating driving range owner into protecting them from those risks." However, Oak Tree here appears to assume it must reasonably operate its driving range. Oak Tree also begs the question by assuming that it has "reasonably operat[ed]" its driving range with regard to the neighboring property. While it is certainly possible that it has acted reasonably, a court, when reviewing a summary judgment motion, is tasked with "viewing all evidentiary inferences in the light most favorable" to the non-moving party. Scott v. Archon Grp., L.P., 2008 OK 45191 P.3d 1207See also Marshall, ¶ 8, 558 P.3d at 1225 ("All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the nonmoving party."). More importantly, "[t]he question of whether a duty is owed by a defendant is one of law; a breach of that duty is a question of fact for the trier," Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty., 2002 OK 7660 P.3d 497Reddell, ¶¶ 12-13, 942 P.2d at 203. We merely conclude Oak Tree owes the Lawrences a duty of reasonable care. The trier of fact may conclude Oak Tree has satisfied that standard by the actions it has already undertaken to protect the Lawrences' property, or that the Lawrences assumed the risk; however, a substantial controversy exists regarding Oak Tree's alleged negligence and the Lawrences' alleged assumption of risk. Therefore, summary judgment is inappropriate.

II. Nuisance

¶29 As to the nuisance theory, Oak Tree asserts the Lawrences' claim "fails because there was no unlawful use of the driving range or duty owed by [Oak Tree]" and "because [the Lawrences] came to the alleged nuisance." The statutory definition of nuisance is as follows:

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or

Second. Offends decency; or

Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or

Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.

50 O.S. 2021 §1.

¶30 In Nichols v. Mid-Continent Pipe Line Co., 1996 OK 118933 P.2d 2721996 OK 118Nichols Court noted that "[t]he pertinent terms of § 821D state: 'A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land.'" Nichols, ¶ 11 n.15, 933 P.2d at 277 n.15. The Nichols Court further noted that

[t]he relevant parts of Comment a to § 821D state:

"It is obvious from the history of the action for private nuisance that the interests originally protected were interests in the use and enjoyment of land. . . . [T]he plaintiff may recover not only for harm arising from acts that affect the land itself and the comfortable enjoyment of it, but also for harm to members of his family and to his chattels."

Nichols, ¶ 11 n.15, 933 P.2d at 277 n.15 (emphasis omitted).

¶31 The Oklahoma Supreme Court has also explained as follows:

[A] nuisance "arises from an unreasonable, unwarranted, or unlawful use" of property. Briscoe v. Harper Oil Co., 1985 OK 43702 P.2d 33substantially interfere with the ordinary comforts of human existence." Kenyon [v. Edmondson], 1920 OK 35180 Okla. 3Id.

Laubenstein v. Bode Tower, L.L.C., 2016 OK 118392 P.3d 706

¶32 The Lawrences have presented evidence from which a reasonable inference might be drawn that they have suffered property damage and face a continuing threat of property damage as well as of physical injury from the hundred or more golf balls landing at high speeds on their property monthly. The circumstances might be viewed by a reasonable factfinder as constituting more than a mere trifling annoyance, inconvenience, or discomfort, and as constituting, instead, a substantial interference with the use and enjoyment of their property. See also Patton v. Westwood Country Club Co., 247 N.E.2d 761, 764 (Ohio Ct. App. 1969) ("[G]olf balls driven onto adjoining premises can be considered a nuisance.").

¶33 Notably, the Lawrences do not complain, for example, about any lighting or noise that may be emanating from the driving range; rather, they complain about the more than 1,300 high-velocity golf balls landing on their property on a yearly basis. Also, the Lawrences do not seek to shut down the driving range; rather, they seek "an adequate safety net."

¶34 The Lawrences have presented evidence that the errant shots have resulted in more than one broken window in one of their children's bedrooms and that there is a real threat of physical harm either from broken glass or, as allegedly occurred to a neighbor as well as their landscaper, from a direct impact. Viewing the facts in a light most favorable to the Lawrences as the non-movant, we conclude a genuine dispute of material fact exists as to whether the circumstances constitute a nuisance.

¶35 Oak Tree cites to the Restatement (Second) of Torts, § 840D (1979) in support of its assertion that the Lawrences do not have a claim because they came to the (alleged) nuisance that was already in existence. That section states: "The fact that the plaintiff has acquired or improved his land after a nuisance interfering with it has come into existence is not in itself sufficient to bar his action, but it is a factor to be considered in determining whether the nuisance is actionable." Restatement (Second) of Torts, § 840D (1979). The comments to § 840D state that in the absence of a prescriptive right -- which would "not run in favor of the defendant until the nuisance has caused actual interference with the use and enjoyment of the land for the required period" --

[t]he rule generally accepted by the courts is that in itself and without other factors, the "coming to the nuisance" will not bar the plaintiff's recovery. Otherwise the defendant by setting up an activity or a condition that results in the nuisance could condemn all the land in his vicinity to a servitude without paying any compensation, and so could arrogate to himself a good deal of the value of the adjoining land. The defendant is required to contemplate and expect the possibility that the adjoining land may be settled, sold or otherwise transferred and that a condition originally harmless may result in an actionable nuisance when there is later development.

Id. § 840D cmts. a & b.

¶36 Further comments and illustrations to § 840D state that an important consideration for some courts is whether the remedy is "out of all proportion to the harm done." Id. § 840D cmt. c, illus. 4. For example, if one moves next to "a brewery in a former residential area in which industrial plants are beginning to appear" and subsequently attempts, through a nuisance action, to eliminate "[t]he brewery noises, odors and smoke" -- which would presumably require that the brewery cease operations altogether -- the rule articulated in § 840D "may . . . prevent recovery." Id. § 840D cmt. c, illus. 3.

¶37 Even assuming arguendo that these principles are applicable in Oklahoma, 

CONCLUSION

¶38 We conclude a substantial controversy exists regarding Oak Tree's alleged negligence and the Lawrences' alleged assumption of the risk. We further conclude a genuine dispute of material fact exists as to whether the circumstances constitute a nuisance. Therefore, we reverse the district court's May 2024 Judgment granting Oak Tree's motion for summary judgment, and we remand the case to the district court for further proceedings.

¶39 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

Laubenstein, ¶ 11, 392 P.3d at 710 (citations omitted).

Crushed Stone Co. v. Moore, 1962 OK 65369 P.2d 811Crushed Stone involved a public nuisance. See Randle v. City of Tulsa, 2024 OK 40556 P.3d 612Crushed Stone . . . , we recognized that the operation of a limestone rock quarry constituted a public nuisance, due to the concussive explosions, projectile debris, and dust that filled the air and settled on nearby properties."). Nevertheless, the Court's reasoning in Crushed Stone is in some respects consistent with § 840D, particularly § 840D cmt. b, in that the Court expressly refused to rule in a manner that "would be tantamount to holding that, because of the operation of [a certain business operation] before, and at the time, the [plaintiffs] acquired their property, [the operation] could restrict [the neighboring property's] future uses." Crushed Stone, ¶ 14, 369 P.2d at 816.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105